IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GILEAD SCIENCES, INC., Plaintiff, | ) | |
| v. | ) | C.A. No. ____________ |
| CIPLA LTD., Defendant. | ) | |

**COMPLAINT**

Plaintiff Gilead Sciences, Inc. ("Gilead" or "Plaintiff"), by its attorneys, hereby alleges as follows:

**NATURE OF THE ACTION**

1. Gilead is a leading research-based pharmaceutical company that discovers, develops, and brings to market transformative medicines in areas of unmet medical need, including treatments for human immunodeficiency virus ("HIV"), hepatitis B virus, hepatitis C virus, liver diseases, serious cardiovascular and respiratory diseases, and cancer.

2. This case relates to Gilead's DESCOVY®, which has benefited hundreds of thousands of people and is recognized as one of the most successful medicines in its class. Approved by the U.S. Food and Drug Administration ("FDA") in 2016, DESCOVY® has been proven safe and effective for, among other things, HIV-1 treatment and HIV-1 prevention (pre-exposure prophylaxis, or PrEP) in at-risk populations. DESCOVY® contains two main components—tenofovir alafenamide ("TAF") and emtricitabine ("FTC"). Both have contributed to the medicine's clinical and commercial success.

3. Gilead's extensive research and development program for DESCOVY® led to numerous groundbreaking inventions. For example, Gilead invented a formulation containing

TAF, emtricitabine, and other components for the treatment and prevention of HIV, as well as methods of treating patients with its patented formulations. Gilead's inventions of DESCOVY®, and methods of treating and preventing HIV-1 with DESCOVY®, are protected by U.S. Patent Nos. 12,629,338 (the "'338 Patent"), 12,648,911 (the "'911 Patent"), and 12,661,323 (the "'323 Patent") (together, the "Patents-in-Suit"). The Patents-in-Suit are listed in the FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") for DESCOVY®.

4. In addition, Gilead invented several forms of TAF fumarate, including TAF hemifumarate, TAF monofumarate, and TAF sesquifumarate. Gilead's invention of TAF hemifumarate is protected by U.S. Patent Nos. 8,754,065 and 9,296,769 (the "TAF Hemi Patents"). The TAF Hemi Patents are also listed in the Orange Book for DESCOVY®. Gilead's invention of TAF sesquifumarate resulted in U.S. Patent No. 9,777,028 (the "TAF Sesqui Patent"). Gilead also invented novel chemical methods to produce TAF in an efficient, reliable, and commercially feasible manner. That work resulted in U.S. Patent Nos. 8,664,386, 9,029,534, 9,346,841, and 9,676,804 (the "TAF Process Patents"). The TAF Hemi Patents, the TAF Sesqui Patent, and the TAF Process Patents are asserted in *Gilead Sciences, Inc. v. Cipla Ltd.*, C.A. No. 26-149-MN (D. Del.), discussed further below.

5. Seeking to benefit from Gilead's substantial investments, inventions, research and development, and data that resulted in DESCOVY®, several generic pharmaceutical companies previously filed abbreviated new drug applications ("ANDAs") with the FDA for approval of generic versions of DESCOVY® prior to the expiration of the TAF Hemi and other Orange Book patents. One of those companies was Defendant Cipla Limited ("Cipla" or "Defendant"). Cipla submitted ANDA No. 214059 to the FDA under 21 U.S.C. § 355(j) seeking approval to

engage in the commercial manufacture, use, or sale of a product made under an ANDA referencing DESCOVY® for the treatment of HIV-1 infection in adults and pediatric patients. That case resulted in litigation about Cipla's infringement of the TAF Hemi Patents (and others) in this District between 2020 and 2022. *See Gilead Sciences, Inc. v. Apotex, Inc. et al.*, C.A. No. 20-189-MN (D. Del.) (the "TAF ANDA Litigation"). The TAF ANDA Litigation settled on the eve of trial.

6. Cipla now wants an end run around the 2022 TAF ANDA Settlement Agreement. Still seeking to benefit from Gilead's substantial investments, inventions, and data that resulted in DESCOVY®, Cipla is requesting FDA approval of another TAF/FTC product prior to the expiration of Gilead's relevant patents, including the Patents-in-Suit. On information and belief, Cipla submitted New Drug Application No. 220756 to the FDA pursuant to section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act ("FDCA") that references Gilead's New Drug Application for DESCOVY® ("Cipla's 505(b)(2) Application"). Cipla's 505(b)(2) Application seeks approval for Cipla to market emtricitabine/tenofovir alafenamide oral tablets in 120 mg/EQ 15 mg base and 200 mg/EQ 25 mg base strengths ("Cipla's 505(b)(2) Products").

7. On February 10, 2026, Gilead sued Cipla alleging that the filing of Cipla's 505(b)(2) Application infringes the TAF Hemi Patents and the TAF Sesqui Patent under 35 U.S.C. § 271(e)(2)(A). *See Gilead Sciences, Inc. v. Cipla Ltd.*, C.A. No. 26-149-MN (D. Del.). Gilead further alleged that Cipla will imminently infringe or induce the infringement of those patents and the TAF Process Patents under 35 U.S.C. §§ 271(a), (b), and/or (g) by making, using, offering for sale, selling, and/or importing the Cipla 505(b)(2) Products in or into the United States.

8. Gilead now brings this action against Cipla for infringement of the Patents-in-

Suit, each of which issued after Gilead filed its complaint in *Gilead Sciences, Inc. v. Cipla Ltd.*, C.A. No. 26-149-MN (D. Del.). Non-confidential information related to the Cipla 505(b)(2) Products confirms that Cipla has infringed one or more claims of the Patents-in-Suit under 35 U.S.C. § 271(e)(2)(A) by virtue of the filing of Cipla's 505(b)(2) Application and seeking FDA approval of Cipla's 505(b)(2) Application prior to the expiration of the Patents-in-Suit. Additionally, on information and belief, Cipla will imminently infringe one or more claims of the Patents-in-Suit under 35 U.S.C. §§ 271(a), (b), and/or (c) by making, using, offering for sale, selling, and/or importing the Cipla 505(b)(2) Products in or into the United States.

## PARTIES

9. Gilead is a corporation organized and existing under the laws of Delaware, having a principal place of business at 333 Lakeside Drive, Foster City, California 94404.

10. Gilead's mission is to discover, develop, and deliver innovative therapeutics for people with life-threatening diseases, including treatments and preventatives for HIV infection. Gilead sells DESCOVY® in this judicial district and throughout the United States.

11. On information and belief, Cipla is a company organized and existing under the laws of India, having its principal place of business at Cipla House, Peninsula Business Park, Ganpatrao Kadam Marg, Lower Parel, Mumbai 400013, India. *See Gilead Sciences, Inc. v. Cipla Ltd.*, C.A. No. 26-149-MN, D.I. 12 ¶ 9 (D. Del. May 15, 2026).

## JURISDICTION & VENUE

12. This action arises under the patent laws of the United States of America, 35 U.S.C. §§ 100 *et seq.*, and this Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

13. The Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C.

§§ 2201 and 2202. An actual, substantial, and justiciable controversy exists between Gilead and Cipla of sufficient immediacy and reality to warrant the issuance of a declaratory judgment regarding the parties' adverse legal interests with respect to the Patents-in-Suit.

14. This Court has personal jurisdiction over Cipla by virtue of, among other things, its systematic and continuous contacts with this jurisdiction. On information and belief, either directly or through its subsidiaries, agents, and/or affiliates, Cipla regularly and continuously transacts business within Delaware, including by manufacturing, selling, offering for sale, marketing, distributing, and/or importing generic versions of pharmaceutical products in the United States, including Delaware. On information and belief, either directly or through its subsidiaries, agents, and/or affiliates, the FDA has approved more than 190 Cipla applications seeking to market and sell pharmaceutical products throughout the United States, including in Delaware. On information and belief, Cipla derives substantial revenue from the sale of those products in Delaware and has availed itself of the privilege of conducting business within Delaware.

15. On information and belief, Cipla markets and distributes its pharmaceutical products through subsidiaries, agents, and/or affiliates including Cipla USA Inc., a Delaware corporation that is registered to do business and has appointed an agent to accept service in Delaware.

16. This Court also has personal jurisdiction because Cipla has filed its 505(b)(2) Application seeking approval from the FDA to market and sell its 505(b)(2) Products throughout the United States, including in Delaware. On information and belief, Cipla intends to commercially manufacture, use, and sell Cipla's 505(b)(2) Products upon receiving FDA approval. On information and belief, if and when the FDA approves Cipla's 505(b)(2)

Application, Cipla's 505(b)(2) Products would, among other things, be marketed, distributed, and sold in Delaware, and/or prescribed by physicians practicing in and dispensed by pharmacies located within Delaware, all of which would have a substantial effect on Delaware. By filing its 505(b)(2) Application, Cipla has made clear that it intends to use its distribution channels to direct sales of Cipla's 505(b)(2) Products into Delaware.

17. Further, this Court has personal jurisdiction over Cipla because Cipla has previously been sued in this District and has not challenged personal jurisdiction, and Cipla has affirmatively availed itself of this Court's jurisdiction by filing counterclaims in this District. *See, e.g.*, *Gilead Sciences, Inc. v. Cipla Ltd.*, C.A. No. 26-149-MN, D.I. 12 (D. Del. May 15, 2026); *Acerta Pharma B.V. v. Cipla Ltd.*, C.A. No. 24-587-GBW, D.I. 10 (D. Del. July 22, 2024); *Astellas Pharma Inc. v. Cipla Ltd.*, C.A. No. 24-1333-GBW, D.I. 24 (D. Del. Feb. 18, 2025). Indeed, Cipla litigated the TAF ANDA Litigation, which was a case and counterclaims involving Cipla's infringement of the TAF Hemi Patents, to the eve of trial in this District. *See Gilead Sciences, Inc. v. Apotex, Inc. et al.*, C.A. No. 20-189-MN (D. Del.). Upon information and belief, Cipla has also availed itself of the legal protections of the State of Delaware by having filed suit in this jurisdiction. *See, e.g.*, *Cipla Ltd. v. Boehringer Ingelheim Pharms. Inc.*, C.A. No. 22-300-MN, D.I. 2 (D. Del. Mar. 4, 2022); *Cipla Ltd. v. AstraZeneca AB*, C.A. No. 19-733-MN, D.I. 2 (D. Del. Apr. 24, 2019).

18. Alternatively, this Court may exercise personal jurisdiction over Cipla pursuant to Federal Rule of Civil Procedure 4(k)(2) because Gilead's claims arise under federal law; Cipla is a foreign company not subject to personal jurisdiction in the courts of any state; and Cipla has sufficient contacts with the United States as a whole, including but not limited to marketing and/or selling generic pharmaceutical products that are distributed and sold throughout the

United States, such that this Court's exercise of jurisdiction over Cipla satisfies due process.

19. Venue is proper in this Court under 28 U.S.C. §§ 1391(c)(3) because Cipla is a foreign corporation and may be sued in any judicial district in the United States in which it is subject to the court's personal jurisdiction, including in this District.

**BACKGROUND**

20. Gilead developed a groundbreaking HIV antiviral called tenofovir in the 1990s. Tenofovir is a potent HIV antiviral, but it is not viable as an oral medicine. To bring this breakthrough to patients, Gilead chemists needed to find ways to change tenofovir to make it orally bioavailable while retaining its remarkable activity. Gilead did this by creating and studying many prodrugs of tenofovir—molecules that can be absorbed by the body and then convert to tenofovir once in the body or in target cells. TAF is one of the tenofovir prodrugs that Gilead invented. TAF has the following chemical structure:




Notably, TAF has three stereocenters, including one at its phosphorus atom. This makes TAF difficult to manufacture at commercially viable levels.

21. Gilead continued to study TAF and discovered that it was remarkably effective. Gilead found that TAF was ten times more active than another leading tenofovir prodrug (called TDF) and exhibited a surprising and unexpected ability to accumulate tenofovir preferentially in the cells that serve as an HIV reservoir.

22. Gilead began developing TAF as a clinical candidate in 2010. At that point,

Gilead needed a commercially feasible way to make TAF. One way Gilead solved this problem was to invent a new manufacturing technique for TAF. Gilead discovered a synthetic route to TAF that substantially increased the useful yield for the TAF manufacturing process and made it commercially feasible.

23. A second way that Gilead solved this problem was to study many different multi-component forms of TAF, such as salts, cocrystals, hydrates, and solvates. Gilead discovered a form of TAF called TAF monofumarate ("TAF Mono"), which is a composition in which one molecule of TAF is associated with one molecule of fumaric acid. It also discovered a form called TAF hemifumarate ("TAF Hemi")—a composition in which two molecules of TAF are associated with one molecule of fumaric acid. TAF Hemi is the TAF fumarate drug substance in DESCOVY®.

24. Even after Gilead overcame the initial challenges in developing forms of TAF that were safe, effective, and commercially feasible, Gilead sought to develop a pharmaceutical formulation that could safely and effectively deliver TAF to patients.

25. Emtricitabine ("FTC") is another HIV antiviral medication that was developed and commercialized by Gilead. Gilead scientists discovered that combination therapy with TAF and FTC may be more effective and have reduced side effects compared to either drug alone, as well as be more convenient for patients, and they set out to develop a combination tablet containing both TAF and FTC as active ingredients.

26. In developing this combination therapy, Gilead scientists realized that formulating TAF and FTC in a tablet that would remain stable, without degradation of either active ingredient, would be a considerable challenge. After researching and testing numerous formulations, Gilead scientists discovered that in tablets containing both TAF and FTC, such as

those where TAF and FTC are about 40% to 75% by weight of the tablet, there is a relationship between the concentration of TAF and the stability of TAF in the tablet, and they formulated what became DESCOVY® with a relatively high concentration of TAF based on the total tablet weight. Gilead scientists also discovered that it was possible to formulate tablets containing TAF and FTC that remained stable while reducing the total number of non-pharmaceutically active excipients. That formulation work ultimately led to the development of DESCOVY®.

27. Gilead holds approved NDA No. 208215 for DESCOVY® tablets in two strengths: 200 mg of emtricitabine and 25 mg of TAF base equivalents, and 120 mg of emtricitabine and 15 mg of TAF base equivalents. DESCOVY® was approved for HIV-1 treatment in 2016 and HIV-1 prevention (pre-exposure prophylaxis, or PrEP) in 2019.

**PATENTS-IN-SUIT**

28. On May 19, 2026, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 12,629,338 (the "'338 Patent"), titled "Pharmaceutical Formulations Comprising Tenofovir Alafenamide and Emtricitabine." A true and correct copy of the '338 Patent is attached hereto as Exhibit A. The claims of the '338 Patent are valid, enforceable, and will not expire until June 29, 2036. Gilead is the assignee of the '338 Patent and has the right to enforce it.

29. On June 9, 2026, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 12,648,911 (the "'911 Patent"), titled "Pharmaceutical Formulations Comprising Tenofovir Alafenamide and Emtricitabine." A true and correct copy of the '911 Patent is attached hereto as Exhibit B. The claims of the '911 Patent are valid, enforceable, and will not expire until June 29, 2036. Gilead is the assignee of the '911 Patent and has the right to enforce it.

30. On June 23, 2026, the U.S. Patent and Trademark Office duly and legally issued

U.S. Patent No. 12,661,323 (the "'323 Patent"), titled "Pharmaceutical Formulations Comprising Tenofovir Alafenamide and Emtricitabine." A true and correct copy of the '323 Patent is attached hereto as Exhibit C. The claims of the '323 Patent are valid, enforceable, and will not expire until June 29, 2036. Gilead is the assignee of the '323 Patent and has the right to enforce it.

31. At least one claim of each of the Patents-in-Suit covers DESCOVY® or approved methods of using DESCOVY®. Each of the Patents-in-Suit is listed in the Orange Book for DESCOVY®.

## CIPLA'S INFRINGEMENT OF THE PATENTS-IN-SUIT

32. On information and belief, Cipla submitted its 505(b)(2) Application seeking the FDA's approval to engage in the commercial manufacture, use, importation, offer for sale, and/or sale of Cipla's 505(b)(2) Products in or into the United States before the expiration of each Patent-in-Suit.

33. By letter dated December 29, 2025, and received by Gilead via Federal Express no earlier than December 30, 2025, Cipla notified Gilead that Cipla had submitted its 505(b)(2) Application to the FDA, seeking approval to market the Cipla 505(b)(2) Products in reliance on Gilead's investments, inventions, and data ("Cipla's Notice Letter").

34. By submitting its 505(b)(2) Application and as stated in its Notice Letter, Cipla has represented to the FDA that its 505(b)(2) Products contain FTC/TAF in the same dosage amounts—200/25 mg and 120/15 mg —as DESCOVY®; that Cipla desires for the FDA to rely on Gilead's DESCOVY® data to approve Cipla's 505(b)(2) Products; and that Cipla's 505(b)(2) Application contains data as required to show that its 505(b)(2) Products have the same bioavailability as and/or are bioequivalent to DESCOVY®.

35. Cipla's regulatory filings in the United Kingdom ("U.K.") confirm that Cipla

seeks to market an FTC/TAF 200 mg/25 mg product. Ex. D § 6.

36. Cipla's public regulatory filings in the U.K. state that Cipla's proposed FTC/TAF 200 mg/25 mg product contains lactose, crospovidone, magnesium stearate, and a film coating containing macrogol (E1521), polyvinyl alcohol-part.hydrolyzed (E1203), talc (E553b), and titanium dioxide. Ex. D § 6; Ex. E §§ 2, 6.1. Cipla also disclosed that Cipla's proposed FTC/TAF 200 mg/25 mg product is a capsule shaped, biconvex film coated tablet with a dimension of 14 mm x 6.9 mm. Ex. E § 3.

37. On information and belief, the TAF in Cipla's 505(b)(2) Products is TAF fumarate.

38. On information and belief, Cipla's 505(b)(2) Products do not contain any active ingredients other than TAF fumarate and emtricitabine.

39. On information and belief, Cipla's 505(b)(2) Products contain one or more excipients selected from a disintegrant (i.e., crospovidone), a lubricant (i.e., magnesium stearate), a filler (i.e., lactose), or any combination thereof.

40. On information and belief, Cipla's 505(b)(2) Products do not include starch.

41. On information and belief, Cipla's 505(b)(2) Products contain a polymeric coating.

42. On information and belief, about 4% to 12% by weight of the tablet core of Cipla's proposed FTC/TAF 200 mg/25 mg product is TAF or a form of TAF fumarate.

43. On information and belief, about 40% to about 75% by weight of the tablet of Cipla's 505(b)(2) Products is TAF and FTC.

44. On information and belief, the total tablet weight of Cipla's 505(b)(2) Products is less than 600 mg.

45. On information and belief, Cipla is seeking approval to market its 505(b)(2) Products for some or all of the same approved indications as DESCOVY®. On information and belief, Cipla's proposed label for its 505(b)(2) Products will instruct physicians and healthcare providers to administer Cipla's 505(b)(2) Products for, among other things, the treatment of HIV-1 infection in adults and pediatric patients, and at-risk adults and adolescents for pre-exposure prophylaxis (PrEP) to reduce the risk of HIV-1 infection.

## CLAIMS FOR RELIEF

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 12,629,338

46. Each of the preceding paragraphs 1–45 is incorporated as if fully set forth herein.

47. On information and belief based on the information presently available to Gilead, Cipla's submission of Cipla's 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Cipla 505(b)(2) Products in or into the United States before the expiration of the '338 Patent constitutes a statutory act of infringement of at least one claim of the '338 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

48. On information and belief based on the information presently available to Gilead, upon FDA approval of Cipla's 505(b)(2) Application, Cipla will infringe at least one claim of the '338 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling the Cipla 505(b)(2) Products in the United States or by importing the Cipla 505(b)(2) Products into the United States. This entitles Gilead to a declaratory judgment and associated relief.

49. On information and belief based on the information presently available to Gilead, upon FDA approval of Cipla's 505(b)(2) Application, Cipla will also actively induce

infringement of at least one claim of the ’338 Patent in violation of 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell the Cipla 505(b)(2) Products in the United States, or to import the Cipla 505(b)(2) Products into the United States.

50. On information and belief, Cipla has actual or constructive knowledge of the ’338 Patent, which is listed in the Orange Book for DESCOVY®.

51. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the ’338 Patent under 35 U.S.C. §§ 271(a) and (b). Cipla has submitted its 505(b)(2) Application to the FDA seeking to market its 505(b)(2) Products in the United States upon approval. On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States the Cipla 505(b)(2) Products prior to the expiration of the ’338 Patent.

52. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the ’338 Patent because FDA approval and Cipla’s commercialization of the Cipla 505(b)(2) Products may occur as early as summer 2026, but for the 30-month stay caused by Gilead’s filing of its complaint in *Gilead Sciences, Inc. v. Cipla Ltd.*, C.A. No. 26-149-MN (D. Del.). *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA’s commitment to “[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt” and “90 percent of standard non-NME original NDA

submissions within 10 months of receipt"). Cipla's actions, including, but not limited to, the submission of its 505(b)(2) Application and Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its 505(b)(2) Application indicate a refusal to change its course of action and intent to launch imminently.

53. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla's manufacture, use, offer for sale, sale, and/or importation of the Cipla 505(b)(2) Products in or into the United States prior to expiration of the '338 Patent will infringe the '338 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b). If Cipla's marketing and sale of the Cipla 505(b)(2) Product prior to expiration of the '338 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 12,648,911**

54. Each of the preceding paragraphs 1–53 is incorporated as if fully set forth herein.

55. On information and belief based on the information presently available to Gilead, Cipla's submission of Cipla's 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Cipla 505(b)(2) Products in or into the United States before the expiration of the '911 Patent constitutes a statutory act of infringement of at least one claim of the '911 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

56. On information and belief based on the information presently available to Gilead, upon FDA approval of Cipla's 505(b)(2) Application, Cipla will actively induce infringement or contribute to infringement of at least one claim of the '911 Patent under 35 U.S.C. §§ 271(b) and (c), including but not limited to claim 1, either literally or under the doctrine of equivalents, by

encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell the Cipla 505(b)(2) Products in the United States, or to import the Cipla 505(b)(2) Products into the United States.

57. For example, on information and belief, upon FDA approval, the prescribing information for Cipla's 505(b)(2) Products will direct, instruct, and/or encourage providers to infringe at least one claim of the '911 Patent in violation of 35 U.S.C. § 271(b), and prescribers will administer Cipla's 505(b)(2) Products according to the prescribing information.

58. On information and belief, upon FDA approval, Cipla's 505(b)(2) Products will be offered for sale or sold for use in the methods claimed in the '911 Patent, constitute a material part of the invention claimed in the '911 Patent, and have no substantial non-infringing uses, in violation of 35 U.S.C. § 271(c).

59. On information and belief, Cipla has actual or constructive knowledge of the '911 Patent, which is listed in the Orange Book for DESCOVY®.

60. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '911 Patent under 35 U.S.C. §§ 271(b) and (c). Cipla has submitted its 505(b)(2) Application to the FDA seeking to market its 505(b)(2) Products in the United States upon approval. On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States the Cipla 505(b)(2) Products prior to the expiration of the '911 Patent.

61. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '911 Patent because FDA approval and Cipla's

commercialization of the Cipla 505(b)(2) Products may occur as early as summer 2026, but for the 30-month stay caused by Gilead's filing of its complaint in *Gilead Sciences, Inc. v. Cipla Ltd.*, C.A. No. 26-149-MN (D. Del.). *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Cipla's actions, including, but not limited to, the submission of its 505(b)(2) Application and Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its 505(b)(2) Application indicate a refusal to change its course of action and intent to launch imminently.

62. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla's manufacture, use, offer for sale, sale, and/or importation of the Cipla 505(b)(2) Products in or into the United States prior to expiration of the '911 Patent will infringe the '911 Patent pursuant to at least 35 U.S.C. §§ 271(b) and/or (c). If Cipla's marketing and sale of the Cipla 505(b)(2) Product prior to expiration of the '911 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 12,661,323**

63. Each of the preceding paragraphs 1–62 is incorporated as if fully set forth herein.

64. On information and belief based on the information presently available to Gilead, Cipla's submission of Cipla's 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Cipla 505(b)(2) Products in or into the United States before the expiration of the '323 Patent constitutes a statutory act of infringement of at least one claim of the '323 Patent, either literally or under the

doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

65. On information and belief based on the information presently available to Gilead, upon FDA approval of Cipla's 505(b)(2) Application, Cipla will infringe at least one claim of the '323 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling the Cipla 505(b)(2) Products in the United States or by importing the Cipla 505(b)(2) Products into the United States. This entitles Gilead to a declaratory judgment and associated relief.

66. On information and belief based on the information presently available to Gilead, upon FDA approval of Cipla's 505(b)(2) Application, Cipla will also actively induce infringement of at least one claim of the '323 Patent in violation of 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell the Cipla 505(b)(2) Products in the United States, or to import the Cipla 505(b)(2) Products into the United States.

67. On information and belief, Cipla has actual or constructive knowledge of the '323 Patent, which is listed in the Orange Book for DESCOVY®.

68. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '323 Patent under 35 U.S.C. §§ 271(a) and (b). Cipla has submitted its 505(b)(2) Application to the FDA seeking to market its 505(b)(2) Products in the United States upon approval. On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States the Cipla

505(b)(2) Products prior to the expiration of the ’323 Patent.

69. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the ’323 Patent because FDA approval and Cipla’s commercialization of the Cipla 505(b)(2) Products may occur as early as summer 2026, but for the 30-month stay caused by Gilead’s filing of its complaint in *Gilead Sciences, Inc. v. Cipla Ltd.*, C.A. No. 26-149-MN (D. Del.). *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA’s commitment to “[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt” and “90 percent of standard non-NME original NDA submissions within 10 months of receipt”). Cipla’s actions, including, but not limited to, the submission of its 505(b)(2) Application and Cipla’s systematic attempts to meet the applicable regulatory requirements for approval of its 505(b)(2) Application indicate a refusal to change its course of action and intent to launch imminently.

70. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla’s manufacture, use, offer for sale, sale, and/or importation of the Cipla 505(b)(2) Products in or into the United States prior to expiration of the ’323 Patent will infringe the ’323 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b). If Cipla’s marketing and sale of the Cipla 505(b)(2) Product prior to expiration of the ’323 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Gilead respectfully requests the following relief:

(a) a judgment that Cipla has infringed the Patents-in-Suit under 35 U.S.C.

§ 271(e)(2), either literally or under the doctrine of equivalents;

(b) a judgment pursuant to 35 U.S.C. § 271(e)(4)(A) that the effective date of any approval of Cipla's 505(b)(2) Application under § 505(b) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(b)) is not earlier than the day after the expiration of the Patents-in-Suit, including any applicable exclusivity period to which Gilead is or becomes entitled;

(c) a judgment declaring that the commercial manufacture, use, offer for sale, sale, and/or importation of Cipla's 505(b)(2) Products would constitute infringement of the Patents-in-Suit, or induce or contribute to any such conduct, pursuant to 35 U.S.C. § 271(a), (b), and/or (c), either literally or under the doctrine of equivalents, and providing any further necessary or proper relief based on the Court's declaratory judgment or decree;

(d) a judgment permanently enjoining Cipla, its affiliates, subsidiaries, and each of its officers, agents, attorneys and employees, and those acting in privity or concert with them, from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of Cipla's 505(b)(2) Products until the day after the expiration of the Patents-in-Suit, including any applicable exclusivity period to which Gilead is or becomes entitled, and from otherwise infringing one or more claims of the Patents-in-Suit, either literally or under the doctrine of equivalents;

(e) damages or other monetary relief under 35 U.S.C. § 271(a), (b), (c), and (e)(4)(c) and/or 35 U.S.C. § 284, including costs, fees, pre- and post-judgment interest, to Gilead if Cipla engages in commercial manufacture, use, offers to sell, sale, and/or importation in or into the United States of Cipla's 505(b)(2) Products prior to the latest expiration date of the Patents-in-Suit, including any applicable exclusivity period to which Gilead is or becomes entitled;

(f) an order that this case is exceptional;

(g) an award of Gilead's costs, expenses, reasonable attorneys' fees and such other relief as the Court deems just and proper pursuant to 35 U.S.C. § 285; and

(h) any such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Gilead Sciences, Inc.*

OF COUNSEL:

Eric Alan Stone
Josephine Young
GROOMBRIDGE, WU, BAUGHMAN & STONE LLP
565 Fifth Ave, Suite 2900
New York, NY 10017
(332) 262-0030

Joshua Rosefelt
GROOMBRIDGE, WU, BAUGHMAN & STONE LLP
801 17th Street, NW, Suite 1050
Washington, DC 20006
(202) 505-5830

June 26, 2026